UNITED STATES of America

v.

**8.41 ACRES OF LAND, SITUATE IN ORANGE COUNTY, TEXAS, KWW Associates, et al.**

UNITED STATES of America

v.

**5.00 ACRES OF LAND, SITUATE IN ORANGE COUNTY, TEXAS, the Firestone Tire & Rubber Co., et al.**

UNITED STATES of America

v.

**6.90 ACRES OF LAND, SITUATE IN ORANGE COUNTY, TEXAS, the Firestone Tire & Rubber Co., et al.**

Civ. A. Nos. B–78–169–CA–1547–3, B–78–170–CA–1547–3 and B–78–176–CA–1547–3.

United States District Court, E.D. Texas, Beaumont Division.

Oct. 4, 1984.

Robert J. Wortham, U.S. Atty., and George Phair, Asst. U.S. Atty., Beaumont, Tex., for plaintiff.

George W. Brown, Beaumont, Tex., for defendants.

## ORDER

JOE J. FISHER, District Judge.

CAME ON TO BE HEARD the motion of the Defendants, FIRESTONE TIRE & RUBBER COMPANY and KWW ASSOCIATES, Motion for New Trial, in the above-styled and numbered causes, and the Court, having considered the Motion, set the matter for hearing, whereupon argument of the parties was heard.

The history of these troublesome condemnation cases appears in the reported opinions and need not be recited again. *See U.S. v. 5.00 Acres of Land, Etc.,* 507 F.Supp. 589 (E.D.Tex.1980); 680 F.2d 388 (5th Cir.1982); 576 F.Supp. 685 (E.D.Tex. 1983); 731 F.2d 1207 (5th Cir.1984); 592 F.Supp. 829 (E.D.Tex.1984). After the Court entered the latest final judgment, the landowners timely filed their Motion for New Trial.

The landowners assert they suffered a manifest injustice because the final judgment awards them only a small fraction of the compensation willing buyers in the free market pay for the same property rights.

The district court finds itself in a troubling position: respectfully deferential to the decisions of the Court of Appeals which specified the law of this case, yet convinced that errors committed by the trial court caused a manifest miscarriage of justice.

The initial, and perhaps farthest reaching, error of the trial court was its failure *ab initio* to remand the case to the condemnation commission for further findings as to both the highest and best use of the land and the after-taking value thereof. The landowners had offered extensive evidence of "comparable sales" of the *res* taken, i.e., pipeline easements. The commission erroneously found the highest and best use of the land to be as a "pipeline corridor," rather than as industrial plant sites. The commission's erroneous finding that the taken tracts were "effectively severed" from the parent tracts led it and the trial court to further err "in rejecting the 'before-and-after' method of valuation of the larger tract." *U.S. v. 8.41 Acres,* 680 F.2d at 394.

The district court had instructed the commissioners to the effect that: "The best evidence of market value is comparable sales—i.e., sales from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking." *Id.,* 680 F.2d at 395, *citing United States v. Trout,* 386 F.2d 216, 222–23 (5th Cir.1967). The commission apparently based its award on the "comparable sales" of pipeline easements.

The commissioners can be excused for incorrectly believing that recent sales of nearby pipeline easements were "comparable sales" which were the best evidence of market value of the property rights condemned. The government did, after all, condemn a pipeline easement. The crucial error, however, was the unjustified finding that the taken tracts were severed. If nothing else, the common sensical, albeit naive, approach of the commissioners points up a problem with the merchanistic application of the before-and-after method of valuation in such situations: that the government pays but a small fraction of the price private buyers pay for the same thing in the marketplace.

Notwithstanding that problem, the Court must properly apply the law to the facts in reaching a determination of just compensation. And that the Court failed to do, resulting in a manifestly unfair result.

The initial mistake, explained above, was the district court's clearly erroneous finding of effective severance of the taken tracts from the parent tracts. Having made that error, the Court neglected to make a finding that the parent tracts had lower values after the taking. The record, however, was replete with evidence to that effect, and the trial court further erred in not considering that evidence.

The Court of Appeals, in reviewing the initial judgment of the trial court, concluded that "[t]he landowners had an opportunity to prove the market value of the tracts was higher than established by the Government, but failed to meet this burden," *U.S. v. 8.41 Acres*, 680 F.2d at 395. Of course, the landowners had conceded the *before* taking value of the *parent* tracts and the *after* taking value of the *easement* areas. *U.S. v. 5.0 Acres*, 731 F.2d at 1209. The crucial and still contested fact issue, however, was the *after* taking value of the easement burdened *parent* tracts, of which the easements' value was but a small part. Unlike the Government, the landowners failed to offer comparable sales of easement burdened tracts to prove a lower after-taking value of the parent tracts. Instead, they offered comparable pipeline easement sales.

The Court of Appeals rejected the landowners' evidence and considered only the Government's comparable sales on appeal. Apparently, the Court of Appeals was unaware that the principal sale of the landowners' was not subject to the *Slattery* exclusion rule which excludes evidence of sales negotiated by one having power to condemn. See *Transwestern Pipeline co. v. O'Brien*, 418 F.2d 15, 17–19 (5th Cir. 1969), quoting *Slattery Co., Inc. v. United States*, 231 F.2d 37 (5th Cir.1956). On remand the trial court erroneously compounded the unintentional oversight of the Court of Appeals by ignoring both the admissible sales of the landowners and their expert witnesses' opinion testimony.

Aware that in *Transwestern*, the Court of Appeals "explicitly upheld the appropriateness of the [before-and-after] method for valuing pipeline easements," 418 F.2d at 21, the district court reexamined the record and applied "the proper measure of damages." *8.41 Acres*, 680 F.2d at 392. Concerned lest it violate the clear mandate of the Court of Appeals, the district court exclusively relied upon the government's only credible evidence of the market value of the land as burdened with the easements. That evidence consisted of a single comparable sale of an easement-burdened plant site. On appeal, the Court of Appeals reversed the judgment and held the damage award "unsupported by evidence [in the record]." *U.S. v. 5.00 Acres*, 731 F.2d at 1208.

The apparent rejection of the trial court's factual finding as clearly erroneous—a finding predicated upon the government's sole comparable sale probative of after-taking value—made the further error of the trial court suddenly significant. That error, committed due to this court's misapprehension that it was compelled by the mandate, was the utter failure to consider the admissible, credible evidence originally offered by the landowners simply because it was presented under the wrong valuation theory. That omission violated the crystal clear rule in this circuit that, although comparable sales are often the most reliable form of evidence in determining market value, "other forms of evidence are also admissible on that issue," even though not based on an accepted method of valuation. *United States v. 329.73 Acres, Etc.*, 666 F.2d 281, 283 (5th Cir.1982); *citing United States v. Toronto, Hamilton and Buffalo Navigation Co.*, 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195 (1949); *United States v. Smith*, 355 F.2d 807 (5th Cir.1966). Although the pipeline easement sales testified to by the landowners do not directly establish the value of either the parent tracts or the easement strips, that evidence overwhelmingly indicates a reduction in the parent tracts' after-taking value due to the easement burden.

The landowners offered sales of single pipeline easements, including sales to buyers lacking condemnation power. As is the

custom in the industry, the sales were negotiated on the basis of a certain number of dollars per rod. Of course, "the price per rod is not a useful figure in determining fair market value of the easement area because sales based on a per-rod basis include the value and damages to the strip of land *plus damages to the remainder of the tract." Transwestern,* 418 F.2d at 18 (emphasis added).

The per-rod prices of the admissible "comparable sales," i.e., those negotiated absent the power of condemnation, significantly exceed the undisputed values of and damages to the actual easement strips. Clearly, the sales do not establish fair market value of the easement area under the before-and-after method of valuation. *U.S. v. 8.41 Acres,* 680 F.2d at 395. But even though offered under an "unorthodox theory," the evidence has considerable probative value under the correct theory. And the magnitude of those marketplace values shows "damages to the remainder of the tract." *Transwestern,* 418 F.2d at 18. Moreover, the testimony of the landowners' expert witnesses was that such damage was substantial.

Of course, the per-rod prices reflect the damage of a *single* pipeline. The government easement, however, perpetually allows installation of *unlimited* lines, entailing repeated loss of access to the tracts, a fact suggesting greater damage to the remainder of the tracts. *See Transwestern,* 418 F.2d at 20. Indeed, it was in part for that reason the trial court explicitly rejected as implausible the unsupported opinion of the government valuation witness: that the after-taking values of the remainders were not affected by the easements. *U.S. v. 8.41 Acres,* 576 F.Supp. at 689.

In sum, the protraction of this litigation reflects a series of errors committed by the trial court. The original judgment was flawed by the erroneous characterization of the easement strips as separate parcels. *U.S. v. 8.41 Acres,* 680 F.2d at 394. On remand, the district court erred in ultimately basing its second judgment on the government's evidence of a single comparable sale. *U.S. v. 5 Acres,* 731 F.2d at 1208. The trial court further erred in not considering the admissible evidence of pipeline sales offered by the landowners. And the third and final judgment of the district court is in all important respects supported exclusively by testimony rejected by the trial court as implausible.

The court is mindful of the longstanding precedent in this Circuit that "a motion for new trial is addressed to the trial judge's discretion. He may grant a new trial if he thinks he has committed error ..." *Telfair v. Zim Israel Navigation Co.,* 428 F.2d 127, 128 (5th Cir.1970); *quoting Marsh v. Illinois Central Railroad Co.,* 175 F.2d 498, 500 (5th Cir.1949). In addition, Rule 59 empowers the trial judge to grant a new trial in order to prevent a miscarriage of justice. *Delta Engineering Corp. v. Scott,* 322 F.2d 11, 15–16 (5th Cir.1963). The trial judge feels compelled to grant such relief. "It is his right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so." 11 C. Wright & A. Miller, *Federal Practice and Procedure,* sec. 2803 (1973).

Admittedly, the landowners presented their case under a novel theory of law and failed. The trial court rejected the landowners' unorthodox theory despite their persuasive argument that it more realistically reflects the free marketplace and, therefore, more accurately reveals the value reasonable businessmen place upon pipeline easements. Because the trial court rejected the landowners' method of valuation, the judge ignored all their evidence, as well. Their reliance on a flexible approach to valuation was not without justification, however, as at least two other circuits permit an expert to reach his opinion of an award "in a way that any man of intelligence would have arrived at a valuation for ordinary business purposes." *United States v. 77,819.10 Acres, Etc.,* 647 F.2d 104, 108 (10th Cir.1981); *quoting United States v. 97.19 Acres, Etc.,* 582 F.2d 878, 883 (4th Cir.1978). Even in the Fifth Circuit, "market value is not an absolute standard, nor an exclusive method of

valuation." *United States v. 329.73 Acres, Etc.,* 666 F.2d at 283; *citing United States v. Virginia Electric and Power Co.,* 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d 838 (1961). "Perhaps no warning has been more repeated than that the determination of value cannot be reduced to an inexorable rule." *United States v. 329.73 Acres, Etc.,* 666 F.2d at 283; *quoting United States v. Toronto, Hamilton and Buffalo Navigation Co.,* 338 U.S. 396, 402, 70 S.Ct. 217, 221, 94 L.Ed. 195 (1949). In rigidly applying the before and after method, the trial court did not heed that warning.

Fundamental fairness requires that the trial court not allow the infliction of a gross miscarriage of justice upon the litigants. In view of the harsh result imposed upon the landowners, and considering the relatively small inconvenience of further proceedings, it is, therefore

ORDERED, ADJUDGED AND DE-CREED that in the interest of justice the Motion for New Trial should be and is hereby GRANTED, and it is further OR-DERED that a new trial be held before the original condemnation commission with the suggestion that the parties stipulate to such facts as are no longer in dispute.